CAREY v. JOHNSON.

(Circuit Court of Appeals, Third Circuit. March 17, 1913.)

No. 1,642.

BROKERS (§ 46*)—CONTRACT OF EMPLOYMENT—PERFORMANCE—RIGHT TO COMMISSIONS.

Where defendant agreed to pay plaintiff a commission of 5 per cent. of the purchase price of certain corporate stocks in case plaintiff found a purchaser at a price satisfactory to defendant, and after plaintiff had obtained a prospective purchaser, who had submitted offers that had been declined, a third person, with whom plaintiff had no relations,

offered a substantially higher price, to whom defendant sold the stock in good faith, they were not liable to plaintiff for commissions. *

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 47; Dec. Dig. § 46.*]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; John B. McPherson, Judge.

Action by Francis King Carey against Alba B. Johnson. Judgment for defendant, and plaintiff brings error. Affirmed.

Hampton L. Carson, of Philadelphia, Pa., for plaintiff in error.

John G. Johnson, of Philadelphia, Pa., for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and RELLS-TAB, District Judge.

BUFFINGTON, Circuit Judge. In the court below, Carey, the plaintiff, sued Johnson and others to recover commissions alleged to have been earned by Carey in the sale by defendants of their stock in the Baldwin Locomotive Works. The claim was for 5 per cent. of the purchase price and was based on an express verbal contract. While the record is large, the questions involved fall within narrow limits, and the facts pertinent to those questions are substantially undisputed. Without entering, therefore, into a statement of all the proofs, it suffices to say there was evidence tending to show that Carey called on defendants and requested them to name a price at which they would sell their shares. This they refused to do, and they did not employ Carey as their agent to sell such shares. What they did in substance was to agree with Carey, who had told them the name of his possible purchaser, that in case he found a purchaser at a price satisfactory to them, and they sold to such purchaser, they would pay Carey a commission of 5 per cent. of the purchase money. In that regard Carey testified:

"I could not get my compensation until I had brought them a purchaser at a price which was satisfactory to them."

In pursuance of this arrangement Carey procured and communicated to defendants two successive offers from his purchaser. These the defendants refused for inadequacy of price. The plaintiff then had the same person offer a higher price. About the same time the defendants received, without action or solicitation on their part, an offer, from a third party with whom Carey had no relations, of a substantially larger price. This offer defendants accepted. On the trial the court instructed the jury that the agreement between Carey and defendants did not preclude the latter from accepting an independent offer for their stock, and if they received an independent offer, for a substantially larger price than Carey's offer, and accepted it in good faith, because the price was substantially higher, and without any fraudulent or unworthy purpose of avoiding payment of commissions to Carey, the latter could not recover commissions on such sale. The jury having found for defendants, this writ was sued out by plaintiff.

The questions of the defendants' good faith and of the substantially inferior, and therefore unsatisfactory, amount to the defendants of Carey's last offer, being established by the verdict, the case resolves itself into the narrow question whether the agreement between these parties thereafter imposed on the owners of the stock, in accepting in good faith a more advantageous offer which came to them unsolicited and from an independent buyer, who bore no relation to Carey, a liability to pay a 5 per cent. commission on such offer. Without discussing the numerous cases bearing upon agents' commissions, it suffices to say we find no case whose facts or principles warrant the recovery of such unearned commissions. The agreement between these parties was simple and clear. It was singularly free from the stipulations as to price, time, and other provisions usually found in the reported cases involving commissions, which restrict the owners', and create the agents', respective fields of operation. In substance, the agreement here was that if Carey brought a satisfactory offer, and it was accepted, he was to have a stipulated commission; and the corollary followed that, unless the defendants did receive and accept an offer brought by Carey that was satisfactory, no commissions were to be paid. Beyond these two limits of contract fulfillment, which entitled Carey to commissions, and nonfulfillment, the agreement did not extend. The defendants certainly made no express contract that, while Carey was seeking a purchaser, they were powerless to accept the offer of a third person. There is no reason or judicial principle on which to bottom and impose on the defendants an implied contract. If the possibility or expectation of a larger offer would of itself justify their rejection of any offer Carey brought to them—and of this there can be no doubt—how can it be contended that, when that justifying possibility or expectation had merged into an actual and better offer, the realization of the fact should be less potent than its expectation. The value of commercial property rests on the owners' power to sell, and the only limitation on that power the owners here imposed on themselves by the agreement was by a sale through Carey at a price satisfactory to themselves. When, then, the price offered by Carey was exceeded by a bona fide, unsought, and independent offer, made to the defendants by other persons, there existed no basis for the defendants and Carey to apply the agreement to pay commissions. In the face of a higher and better one, Carey's offer was not, and could not be, satisfactory to the defendants.

Waiving the question whether under the proofs there was really anything to submit to the jury, certain it is that, fortified as the defendants are by its finding that the offer they accepted was substantially better than Carey's, that it was accepted in good faith, and not for the purpose of avoiding paying Carey commissions, it follows that no error was committed by the court in subsequently entering, and in this court now affirming, the judgment based on such verdict.